YIYONG OH   SBN 230555
Law Offices of YiYong Oh
12471 Tibbetts St.
Sylmar, CA 91342-2650
Tel: 213-598-3350
Fax: 833-817-6977
Email: Yongohlaw@gmail.com

Attorney for Plaintiff Jae Sun Chung

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JAE SUN CHUNG, an individual, | ) Case No.:8:22-CV-01650 |
| | ) |
| Plaintiff, | ) COMPLAINT FOR |
| | ) |
| vs. | ) **(1) VIOLATION OF THE FAIR DEBT** |
| | ) **COLLECTION PRACTICES ACT** |
| BANK OF NEW YORK MELLON | ) **(FDCPA), 15 U.S.C. § 1692e and f(6);** |
| CORPORATION, an American worldwide | ) |
| banking and financial service holding company | ) **(2) VIOLATION OF CALIFORNIA'S** |
| commonly known as BNY MELLON; | ) **FORECLOSURE STATUTES** |
| NEWREZ LLC, a Delaware corporation doing | ) |
| business as SHELLPOINT MORTGAGE | ) **(3) UNFAIR, UNLAWFUL AND** |
| SERVICING; MTC FINANCIAL INC. a | ) **FRAUDULENT BUSINESS PRACTICES-** |
| Dalaware corporation doing business as | ) **CAL. BUS. & PROF. CODE SECTION** |
| TRUSTEE CORPS limited liability company; | ) **17200;** |
| AUCTION.COM, INC., a California | ) |
| corporation doing business as AUCTION.COM | ) **(4) CANCELLATION OF** |
| and DOES 1 through 100, inclusive, | ) **INSTRUMENTS; AND** |
| | ) |
| Defendants. | ) **(5) INJUNCTIVE AND DECLARATIVE** |
| | ) **RELIEF UNDER 28 U.S.C. § 2201(a)** |
| | ) |
| | ) |
| | ) |
| _____ | ) |

## COMPLAINT

Plaintiff Jae Sun Chung, by its undersigned attorneys, for its Complaint complains and alleges against defendants Bank of New York Mellon Corporation commonly known as BNY Mellon ("BNY Mellon"), NewRez LLC dba ShellPoint Mortgage Servicing ("ShellPoint"), MTC Financial Inc., dba Trustee Corps ("MTC"), Auction.Com, Inc., dba Auction.Com ("Auction"), and DOES 1 through 250, inclusive as follows:

## INTRODUCTION

1.  Defendant and other defendants, BNY Mellon, ShellPoint, MTC and Auction, their employees, agents and attorneys, individually and collectively proceeded non-judicial action to erect dispossession or disablement of Plaintiff's property without any lawful authority in Plaintiff's property.

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over this action pursuant to the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692e and f(6), and the state claims related to this federal claim against Defendants BNY Mellon, ShellPoint, MTC, Auction and 1 through 100 Does Defendants in this action.

3.  Venue is proper in this judicial district pursuant to 15 U.S.C. § 1692j and 28 U.S.C. § 1391 because the events giving rise to the allegations in this complaint occurred in this district and Defendants are subject to personal jurisdiction in this judicial district.  Section 1692j of FDCPA provides that a lawsuit be filed in a "judicial district or similar legal entity" where the contract was signed or where the debtor resides.

## PARTIES

4. Plaintiff Jae Sun Chung ("Plaintiff" or "Chung") is an individual and living at residential property, commonly known 22 Lily Pool, Irvine, in the Orange County,

the State of California ("subject property" or "Property").  Plaintiff Chung became the Successor in Interest who has an ownership interest in the subject property since July 25, 2019.

5. Defendant Bank Of New York Mellon Corporation ("BNY Mellon") is an American worldwide banking and financial service holding company in Manhattan, New York City. Defendant BNY Mellon is the world's largest custodian bank and asset servicing company and is incorporated in the State of Delaware.

6. Defendant NewRez LLC dba ShellPoint Mortgage Servicing ("ShellPoint") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Ft. Washington, Pennsylvania, registered with the California Secretary of State as a foreign limited liability company qualified to do business in California.

7. Defendant MTC Financial Inc., dba Trustee Corps ("MTC") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Irvine, California.

8. Defendant Auction.Com, Inc., dba Auction.Com ("Auction") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California, with its principal place of business located in Irvine, California.

9. Plaintiff is ignorant of the true names or capacities of the defendants herein as DOES 1 through 100, inclusive and therefore sues these defendants by such fictitious names.  When the true names, identities or capacities of such fictitiously-designated Defendant are ascertained, Plaintiff will ask leave of Court to amend the Complaint to insert said true names, identities and capacities together with the proper charging allegations.

10.  Plaintiffs are informed and believes and upon such information and belief allege that at all times herein mentioned, Defendants, and each of them, were the agents, employees, and copartners of their said co-Defendants; and, as such, were acting within the course and scope of such agency, service, partnership, venture, and employment at all times herein mentioned; that each and every Defendant, as aforesaid, when acting as a principal, was hiring of each and every other Defendant, as its agent, employee, and attorneys.  Further, each and every Defendant ratified the conduct of the other Defendants.

## STATEMENT OF FACTS

11.  Plaintiff Chung is the successor in interest who obtains an ownership interest in the subject property through his mother in law's grant deed transaction on July 25, 2019.  His mother-in-law became the previous successor in interest in the Property by his wife, Young Byeon on August 26, 2014.

12.  In January 2005, Myong Suk Oh purchased this 3,874 sqft sized subject property for $1.5 million dollars and financed $ 1,331,900,000.00 from America's Wholesale Lender (AWL) as the 1st & 2nd secured loan upon the subject property.

13.  The AWL recorded a Deed of Trust ("DOT") for the 1st mortgage loan as #2005000052274 and a deed of trust and assignment of rents for the 2nd mortgage loan as #200500052275 in the Recorder's Office on January 21, 2005.

14.  The DOT identifies AWL as the lender and beneficiary and CTC Real Estate Services ("CTC") as the Trustee under the Note and the DOT.  Separately, the DOT describes that Mortgage Electronic Registration Systems ("MERS") acts solely as the lender's nominee, with no beneficial interest in the loan.

15.  Besides, Myong had invested $400,000.00 for new travertine flooring, kitchen appliances, wood shutters for 50 windows, recess lights, interior painting, marble countertops, exterior landscaping front and backyard with flagstone, grass,

sprinklers systems, trees, plants, patio covers because the Property was a newly built during the previous year.  Myong financed it from her church friend, Young Byeon ("Young") because Myong expected some good profit margin in case of selling the Property within few years.

16.  However, Myong could not sell the Property since 2008 due to the Housing Crisis.

17.  In early 2011, Myong had to release ownership of the subject property to Young since the $400,000.000.00 was due for repayment and she had no ways to pay it back.  Young agreed to take ownership and in return paid Myong an additional $100,000.00.

18.  For the exchange of all Young's doing so, Myong executed a Grant Deed and a Power of Attorney on April 1, 2011 and agreed her full support and coordination for Young, in any matter regarding the Property.

19.  Due to a large decline in the Property price since the 2008 housing market crush, Young had to defer some of monthly payments, change interest rate, extend the length the loan, or forgive or cancel a portion of the mortgage debt.

20.  In May 2011, Young with Myong pursued a loan modification to adjust some of monthly payments, or forgive or cancel a portion of the mortgage debt with Bank of America, NA ("BOA"), the Successor in Interest to AWL.

21.  Myong and Young submitted several loan modification packages and affidavits to BOA in an effort to obtain an approval of it.

22.  However, Recontrust Company, N.A. ("ReconTrust") started to send several foreclosure notices during her loan modification with BOA and demanded her to pay incorrect amount owed.

23.  On February 10, 2012, ReconTrust caused a Notice of Default and Election to Sell (the "1st NOD") on behalf of defendant BNY Mellon as trustee for "the certificateholders of CWMBS, INC., CHL mortgage pass-through trust 2005-

3, mortgage pass through certificate, series 2005-3" (the "CWMBS 2005-3 trust" or "Trust").

24. Myong and Young did not pay attention about ReconTrust's notices, because ReconTrust was not the trustee under the DOT and Myong and Young were in the middle of a loan modification with BOA.

25. ReconTrust advanced a foreclosure proceeding against the subject property when Myong's loan modification with BOA in underway and Young found ReconTrust was a subsidy company of BOA. Thus, Myong and Young tried to contact BOA and to find "competent and reliable evidence" of their foreclosure proceeding by the ReconTrust.

26. However, BOA stopped any contacts with Myong as well as any sending of the monthly statements for mortgage due to them. Of course, BOA did not offer any reasonable modification plan or any other loan modification option

27. In January 2013, Young was known about The California Homeowner Bill of Rights ("HBOR") became law on January 1, 2013 to ensure fair lending and borrowing practices for California homeowners and HBOR's aim was to give qualified homeowners facing foreclosure a *meaningful opportunity* to obtain a mortgage modification and keep their homes.

28. After studying the HBOR, Myong and Young realized that BOA had done a practice called dual-tracking against them by continuing to foreclose process while simultaneously considering to the loan modification. Thus, Young hired a specialist to check BOA and ReconTrust's dual tracking practice against the subject property.

29. Soon, the specialist found two Assignments of Deed of Trust ("Assignments") conveyed all beneficial interest in the DOT and all rights accrued or to accrue under said deed of trust to defendant BNY Mellon as trustee for the CWMBS2005-3 trust (Trust). Further the specialist found that Assignments were

executed by Edward Gallegos and Loryn Stone, as Assistant Secretaries of MERS, within 2 days interval from February 8 and 10, 2012.  (Please see the Assignments executed by Gallegos at pages 49-50 and Stone at page 56.)

30.   Gallegos and Stone were known as BOA's robo-signers, thus both individuals lacked any agency relationship with MERS.   Further, MERS acts solely as the lender's nominee, with no beneficial interest in the loan, thus a transfer by MERS was void because MERS could not act as the Assigner according to Cal. Civ. Code § 2936. ("The assignment of a debt secured by mortgage carries with it the security.")

31.  For the foregoing reasons, defendant BNY Mellon cannot be the beneficiary under the DOT.

32.  In the early of 2014, Bayview Loan Servicing ("Bayview") emerged as the successor in Interest of BOA and forced Myong and Young to pay all arrears balance with current within 30 days. Thus, Myong and Young contested Bayview to honor their loan modification with BOA because she did not receive any official denial letters yet from BOA.

33.  Bayview refused to do so, such reasons, on or around April 23, 2014, Myong made a Debt Validation Letter to Bayview, but Bayview did not respond to the debt validation letter within thirty-day period, according to 15 U.S.C. § 1692g, 15 U.S.C. § 1692g stipulates that a debt collector must, if requested, provide verification of the alleged debt if the consumer notifies regarding the debt.

34.  Further, Bayview did not send any response, loan verification documents nor mortgage due statements nearly two years.

35.  On August 26, 2014, Young executed a Grant Deed as Instrument No. 2014000345127 and conveyed the title of the subject property to her mother, Jung Ae Chung ("Jung").

36. On May 2, 2016, <u>Randall Jackson</u> of Bayview as Attorney in Fact of BNY Mellon for the Trust, executed a Substitution of Trustee ("Substitution") as an Attorney in Fact of BNY Mellon for the Trust and substituted defendant MTC as the trustee under the DOT.

37. The SOT was recorded on May 2, 2016 as Instrument No. 2016000193584 by defendant MTC.   Neither BNY Mellon nor Bayview is the beneficiary or the trustee under the DOT.

38. On or around June 1, 2017, Young successfully paid off the 2nd loan secured to the Property.

39. On July 25, 2019, Plaintiff Chung became the Successor in Interest of the subject property, through the Grant Deed transaction by his mother-in-law, Jung.

40. On August 15, 2019, defendant MTC caused a Notice of Default and Election to Sell under Deed of Trust ("2nd NOD")

41. In order to prove defendant MTC's lack of security interest, Plaintiff Chung retained Beth Chrisman, a forgery expert and Stephen Polak, a retired Detective of the Los Angeles Police Department.

42. On September 13, 2019, Ms. Chrisman as a Certified Forensic Document Examiner declared under penalty of perjury under the laws of the State of California that Gallegos and Stone's signatures on the Assignments were forged after through her analysis of the other documents signed by both individuals.

43. Such robo-signing is forgery and robo-signed documents are VOID as a matter of law. A deed is void if the grantor's signature is forged.  Therefore, all subsequent transfers by Defendants are void due to the grantor's forged signature because a forged deed purporting to transfer real property in the State of California is completely void and an ineffective transfer of the title to the grantee.

44. On November 26, 2019, Mr. Polak as a private investigator declared under penalty of perjury under the laws of the State of California that Gallegos

and Stone were robo-signers because two individuals had never gotten any lawful affiliation whatsoever with MERS.

45.  Thus, the Assignments by Gallegos and Stone were invalid and void due to forgery and their lack of agency relationship with MERS which does not have any legal or beneficial interest in the DOT.

46.  Thus, defendant BNY Mellon is not the lender or the beneficiary under the Note and DOT and does not have an authority to appoint defendant MTC as the trustee, instruct MTC to commence a non-judicial foreclosure according to Cal. Civ. Code § 2932.5

47.  However, On January 16, 2020, defendants MTC and Auction.Com, Inc., dba Auction. Com ("Auction") caused a Notice of Trustee's Sale and demanded Plaintiff to pay $1,344,599.82 ("1st NOT").

48.  On January 23, 2020, defendant Newrez Inc., dba ShellPoint Loan Servicing ("ShellPoint") emerged instead of Bayview, as the servicer for defendant BNY Mellon.

49.  With experts' affidavits, on February 20, 2020, Plaintiff Chung sent the Notices personal legal liability with the U.S. Certified Mails to defendants BNY Mellon, ShellPoint, MTC, Auction, its employees and attorneys.

50.  On October 23, 2021, Mr. Robert Ramer as a Certified Mortgage Securitization Auditor, a Certified Bloomberg terminal operator, and a Certified Fraud Examiner declared under the penalty under the laws of the United States that Assignments by Gallegos and Stone as employees of MERS, were invalid and void because MERS do not have any legal or beneficial interest in the DOT.

51.  Mr. Ramers further declared that the Assignments were invalid and void due to post-closing date transfer to defendant BNY Mellon as the trustee for the CWMBS 2005-03 trust (Trust).

52.  Thus, defendant BNY Mellon could not be the lender or the beneficiary under the DOT and did not have an authority to appoint defendant MTC as the trustee, instruct MTC to commence a non-judicial foreclosure according to Cal. Civ. Code § 2932.5 ("The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.")

53.  Consequently, defendants MTC or Auction was not substituted by the beneficiary or the beneficiary's agent under the DOT as well as according to Cal. Civ. Code section 2934a.

54.  Evidently, defendants MTC and Auction had no legal standing to act on behalf of BNY Mellon for the Trust in issuing the notices of default and trustee's sale, but they continued to institute improper foreclosure proceedings against the subject property.

55.  On November 5, 2021, defendants MTC and Auction caused a Notice of Trustee's Sale and demanded Plaintiff to pay $1,895,168.82 ("2[nd] NOT")

56.  On June 22, 2022, defendants MTC and Auction caused a Notice of Trustee's Sale and demanded Plaintiff to pay $1,946,712.97 ("3[rd] NOT")

57.  Therefore, Plaintiff alleges that all subsequent instruments, the notices of default and trustee's sale recorded by defendant MTC as the trustee are invalid and void because (1) if not recorded by an entity that is the trustee, mortgagee, beneficiary, or authorized agent and (2) if recorded by an entity not properly substituted as the trustee. Calif. Civil Code § 2924(a)(1) allows a trustee, mortgagee, beneficiary, or authorized agent to initiate non-judicial foreclosure proceedings pursuant to the power of sale contained in the DOT.

### FIRST CAUSE OF ACTION

**Violations of the Fair Debt Collection Practices Act**
**(Against all Defendants)**

58. Plaintiff re-alleges and incorporates herein by reference paragraphs 11 through 57, inclusive, as though fully set forth herein.

59. In this case, defendants acted as beneficiaries and trustees executing and recording false and misleading documents upon the subject property, and instituted improper foreclosure proceedings against Plaintiff.

60. Plaintiff alleges and complains that Defendants threatened to take non-judicial action to erect dispossession or disablement of Plaintiff's property with no right to claim the property as collateral through an enforceable security interest since their deeds were void.

61. Plaintiff alleged that Defendants would be debt collectors for purposes of Section 1692f(6), in the term is any person "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interest."

62. Because the FDCPA § 1692a(6) states that "[f]or the purpose of section 1692f(6)" a debt collector also includes a security interest enforcer.

63. The FDCPA § 1692f(6) prohibits: "[t]aking or threatening to take any non-judicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; .." "Section1692f(6) regulates non-judicial foreclosure activity."

64. The Defendants' acts and practices constitute violations of the FDCPA under 15 U.S.C. §1692f(6), for taking a non-judicial foreclosure action against Plaintiff of his Property without any enforceable security interest in the subject property.

65. Plaintiff alleges Defendants violated 15 U.S.C. § 1692e, from engaging in abusive, deceptive, and unfair practices in the collection of consumer debts, by falsely representing the character and legal status of debt and threatening to

conduct a trustee's sale based on the void instruments which had been manufactured by them.

66.  Plaintiff shows sufficient facts in the Complaint that Defendants' security interest are void due to forgery according to two expert witnesses, Ms. Chrisman and Mr. Polak's declarations at ¶¶ 42-44 (See Chrisman and Polak's declarations as Ex.H at pages 43-65 & Ex.I at pages 66-68.) and due to the break in the chain of title and lack of authority to foreclose against the property according to another expert witness Mr. Ramers' declaration at ¶¶ 50-51.  (See Ramers' Declaration as Ex.J at pages 69- 73.)

67.  Foregoing reasons stated above, Defendants cannot escape liability on grounds that non-judicial foreclosure is not debt collection under the FDCPA.

68.  Plaintiff is therefore entitled to any actual damages, punitive damages and costs and a reasonable attorney's fee as available under the FDCPA, 15 U.S.C. §§1692e and f(6) and related sections.

## SECOND CAUSE OF ACTION

### Violations of California's Foreclosure Statutes
### (Against defendants Shellpoint, MTC and Auction)

69.  Plaintiff incorporates by reference and alleges as if fully set forth herein paragraphs 11 to 68, above, with the same meaning, force and effect

70.  Plaintiff alleges and shows sufficiently in the Complaint that defendants MTC and Auction violate California's comprehensive foreclosure statutes governing proper notice and recordation procedures.

71.  These violations stem from: (1) plausible allegations of robo-signing whereby persons executing documents lacked the requisite personal knowledge and/or agency relationship to do so; and (2) improper recording and notice procedures.

72. In the present case, on April 18, 2016, the Substitution of Trustee ("Substitution") to defendant MTC as the trustee under the DOT, was executed by Randall Jackson as an assistant vice president of defendant BNY Mellon and defendant MTC recorded this Substitution as Instrument #2016000193584 in the Orange County Recorder's office on May 2, 2016. See the SOT as Ex. B at page 27.

73. Plaintiff alleges that said Substitution was invalid because Jackson who executed it, was not an employee of defendant BNY Mellon, but he was an employee of Bayview, thus Jackon was a "robo-signer" who lacked the requisite agency relationship with defendant BNY Mellon who acted as the beneficiary or the beneficiary's agent under the DOT.

74. In support of his allegations of the robo-signer, Plaintiff submits a Declaration of Jackson which he declared himself under penalty of perjury, as the assistant vice president of Bayview on February 22, 2016. (See Randall Declaration as Ex. C at pages 28-30.)

75. Thus, the Substitution was invalid because Jackson lacked an agency relationship with AWL and he or BNY Mellon were not one of the four parties authorized by Section 2924 to record the Substitution.

76. Under the DOT, AWL is the lender and the beneficiary, however, the Substitution was recorded by defendant MTC, thus it was invalid because MTC were not one of the four parties authorized by Cal. Civ. Code § 2934a. See Ex. C. Cal. Civ. Code § 2934a requires that, in order for a trustee to be substituted and the beneficiary or the beneficiary's agent must record the substitution.

77. Again, the language in the DOT tracks this statutory requirement. (See the DOT as Ex. A at page 26 ¶ 24.) ("**Lender, at its option, may from time to time appoint a successor trustee to any Trustee appoint hereunder by an instrument executed and acknowledged by Lender and recorded in the office**

**of the Recorder of the county in which the Property is located.**" (emphasis added)).

78.  Evidently, MTC was not substituted by the beneficiary or the beneficiary's agent according to Cal. Civ. Code section 2934a. Section 2934a requires that, in order for a trustee to be substituted, the beneficiary or the beneficiary's agent must record the substitution.

79.  Thus, defendant MTC had no legal standing to act the trustee under the DOT.  Since the SOT was defective, the subsequent notice of default and the Notices of trustee's sale by defendants MTC are void.

80.  The Notice of Default was recorded by defendant MTC on August 15, 2019. See Ex. D at page 31.

81.  As noted above, Section 2924(a)(1) allows a trustee, mortgagee, beneficiary, or authorized agent to initiate non-judicial foreclosure proceedings pursuant to the power of sale contained in a deed of trust. Foreclosure proceedings are initiated by one of those four parties recording a notice of default.

82.  The language in the DOT tracks this requirement too. See the DOT as Ex. A at Page 24 ¶ 22 "**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default . . . . Trustee shall cause this notice to be recorded . . . .**" (emphasis added).

83.  Evidently, defendants MTC was/is not one of the trustee, mortgagee, beneficiary, or authorized agent under the Cal. Civ. Code § 2924(a)(1) (requiring that, in order to exercise the power of sale in a deed of trust, a notice of default must be recorded by one of the aforementioned parties.)

84.  Consequently, the notice of default (Ex. D.) and all subsequent 1st, 2nd and 3rd notice of trustee's sale (Ex. E, F & G.) executed and recorded by defendants MTC and Auction, are invalid and void because: (1) if not recorded by an entity

that is the trustee, mortgagee, beneficiary, or authorized agent; and (2) if recorded by an entity not properly substituted as the trustee.

85. Since 2016 to present, defendants MTC and Auction committed robo-signing by executing documents related to the subject property and improper recording and notice procedures of it.

86. Thus, defendants MTC and Auction violate California's comprehensive foreclosure statutes governing proper notice and recordation procedures.

### THIRD CAUSE OF ACTION

### (Unfair Practices under California Bus. & Professions Code Section 17200)

### (Against all Defendants)

87. Plaintiff incorporates by reference and alleges as if fully set forth herein paragraphs 11 to 86, above, with the same meaning, force and effect.

88. California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

89. Plaintiff believes and upon such belief contends that Defendants misrepresented material information to be placed on all of the instruments related to the subject property which had been executed and recorded by Defendants.

90. Plaintiff believes and hereby contends that Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice. This conduct is ongoing and continues to this date.

91. Specifically, as fully set forth above, Defendants engage in deceptive business practices with respect to the **initiation of foreclosure proceedings by utilizing** falsified documents and recording those documents in an effort to deceive the public at large as to the validity of such documents. In addition, Defendants engage in deceptive practices by:

    (a)  **Instituting improper or premature foreclosure proceedings to generate unwarranted fees;**

    (b)  **Executing and recording false and misleading documents;**

    (c)  **Executing and recording documents without the legal authority to do so;**

    (d)  **Failing to disclose the principal for which documents were being executed and recorded in violation of California Civil Code Section 1095;**

    (e)  **Acting as beneficiaries and trustees without the legal authority to do so; and**

    (f)  **Other deceptive business practices**

92. Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California Business and Professions Code Section 17200, et seq.

93. Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

94. The foregoing acts and practices have caused substantial harm to California consumers.

95. Plaintiff believes and upon such belief alleges that the Defendants' unfair, unlawful, and fraudulent business practices and false and misleading advertising present a continuing threat to members of public in that other consumers will be defrauded into having their property improperly sold at

foreclosure. Plaintiff and other members of the general public have no other adequate remedy of law.

96. These acts and practices, as described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200 because their policies and practices described above violate all statutes previously listed and consequently, constitute and unlawful business act of practice within the meaning of Business and Professions Code § 17200.

97. Plaintiff is therefore entitled to attorney's fees as available under California Business and Professions Code Section 17200 and related sections.

## FOURTH CAUSE OF ACTION

### (Cancellation of Instruments)

### (Against All Defendants)

98. Plaintiff re-alleges and incorporates by reference all preceding paragraphs 1 through 97 fully set forth herein.

99. Plaintiff is most commonly, a successor in interest who has an ownership interest in the subject property and is seeking to cancel void instruments against his property because void instruments such as an undelivered or a forged deed does not convey anything and cannot be made the foundation of a good title.

100. In the Complaint, Plaintiff's forgery and fraud experts and private investigator testified under penalty of perjury sufficient facts about defendants' written instruments related to the subject property are void: (1) Beth Chrisman as the certified forensic document examiner declared that Defendants' Assignments by Gallegos and Stone are forged. (See ¶ 42.); (2) Stephen W. Polak as the private investigator declared that Gallegos and Stone lacked the requisite agency relationship with BNY Mellon or MERS; (See ¶ 44.) and (3) Robert Ramers as the certified fraud examiner declared that defendants' written instruments related to

the subject property are defective, invalid or void due to a break in the chain of title, robo-signing and no legal standing to foreclose. (See ¶ ¶ 50-51.)

101.   California Civil Code § 3412 provides for the cancellation of a written instrument.   Pursuant this statute, a court "can order cancellation of an invalid written instrument that is void or voidable."

102. Plaintiff has alleged sufficient facts to show that the above defendants' written instruments related to his property are void and null *ab initio* due to forgery or fraud as follows: Assignment of Deed of Trust as instrument 2012-000073736 dated February 8, 2012; Corporation Assignment of Deed of Trust as instrument 2012-000077986 dated February 10, 2012; Substitution of Trustee as instrument 2016-000193584 dated May 2, 2016; Notice of Default and Election to Sell under Deed of Trust as instrument 2019-0003017808 dated August 15, 2019; and Notice of Trustee's Sale as instrument 2020-000019773 dated January 16, 2020, Notice of Trustee's Sale as instrument 2021-000671515 dated November 5, 2021 Notice of Trustee's Sale as instrument 2022-000223451 dated June 22, 2022 in the Orange County Recorder's Office.

103. By this action, Plaintiff seeks cancellation of all of invalid written instruments in Paragraph 102 that are void or voidable, as void *ab initio*, as well as on its claim for setting aside the recordation of all of the above instruments as of the recordation.

## FIFTH CAUSE OF ACTION

### (Injunctive and Declaratory Relief under 28 U.S.C. § 2201(a))

### (Against All Defendants)

104. Plaintiff hereby re-alleges and incorporates by reference paragraphs 1 through 103 and paragraphs as if the same were fully set forth herein.

105. As noted above, Plaintiff's forgery and fraud experts and private investigator testified under penalty of perjury sufficient facts about defendants'

written instruments related to the subject property are void and null *ab initio* due to forgery or fraud.

106.   Plaintiff contends that all of instruments executed and recorded by defendants BNY Mellon, ShellPoint, MTC, Auction, their employees and attorneys are the invalid mortgage documents to allow Defendants to streamline the foreclosure process and ultimately sell Plaintiff's primary residence at a Trustee's Sale.

107.   Plaintiff further believes and upon such belief contends that the purported power of sale contained in the DOT no longer applies, pursuant to California Civil Code § 2932,5 and that the DOT is of no force and effect because each of the Defendants' security interest in the property has been rendered void.

108.   Plaintiff, in contrast to Defendants, believes that none of the Defendants had or have the authority to take any action with respect to loans originated by the lender, and liens established by the lender

109.   Here, Plaintiff contends an actual controversy has risen and now exists between Plaintiff and Defendants concerning their lawful authority to foreclose with their void instruments upon the subject property whether: (1) BNY Mellon and ShellPoint  are the beneficiary under the DOT; (2) Defendant MTC or Auction is the trustee duly to file the SOT, NOD or the 1st, 2nd and 3rd NOT, with respect to the DOT established by the lender; and (3) Defendants MTC and Auction are entitled to sell Plaintiff's property under the DOT with their void instruments upon the subject property.

110.   The Federal Rules of Civil Procedure "govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."

111.   Accordingly, Plaintiff seeks a judicial declaration pursuant to 28 U.S.C. § 2201 (a) that:

a) Any actions taken by Defendants, any of their agents or employees or attorneys with respect to the subject property, are invalid, void and without any effect whatsoever;

b) All of the written instruments in Paragraph 102 that are void or voidable executed or recorded by Defendants, or any of their agents or employees or attorneys, that purport to on behalf of Plaintiff, are void, invalid and unenforceable.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiff Chung requests that this Court enter judgment against Defendants as follows:

1. Award Plaintiff actual damages, punitive damages and costs and a reasonable attorney's fee as available under the FDCPA, 15 U.S.C. §§1692e and f(6);

2. Issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FDCPA;

3. Award Plaintiff a reasonable attorney's fees as available under California Business and Professions Code Section 17200 and related sections;

4. Declaratory judgment cancelling all of the invalid written instruments listed in Paragraph 102 that are void or voidable, executed and recorded by Defendants and any their agents or employees or attorneys purporting to affect title of Plaintiff's property, be declared void, invalid and non-enforceable under 28 U.S.C. § 2201(a); and

5. Preliminary and permanent injunction enjoining and restraining Defendants, its employees and attorneys assigns and all persons acting in concert or participating with Defendants' unlawful conduct as alleged herein; and

6. Such other and further relief as this Court determines to be just and equitable.

Dated: September 2, 2022

Respectfully submitted,

By: _____

YIYONG OH
Attorney for Plaintiff Jae Sun Chung

## <u>VERIFICATION</u>

I, Jae Sun Chung, am the plaintiff in the above-entitled action. I have read the Complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United State of America that the foregoing is true and correct and that this declaration was executed at Irvine, California.


DATED: _09/02/2022_    _____

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
SUBDIVISION DEPARTMENT

Recording Requested By:
M. AVILA

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||   90.00

**2005000052274 01:09pm 01/21/05**

104 27 D11 29

0.00 0.00 0.00 0.00 84.00 0.00 0.00 0.00

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
ABIGAIL M. FERRERA

_1520609-11_

[Space Above This Line For Recording Data]

51974EJS
[Escrow/Closing #]

0008547261401005
[Doc ID #]

# DEED OF TRUST

MIN 1000157-0004716953-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   JANUARY 14, 2005   , together with all Riders to this document.

**(B) "Borrower"** is
MYONG SUK OH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16                                                      Initials: _MO_

VMP -6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291            **Form 3005 1/01**
CONV/VA

* 2 3 9 9 1 *

* 0 8 5 4 7 2 6 1 4 0 0 0 0 0 1 0 0 6 A *

EX. A
Page 4 of 79
23

DOC ID #: 0008547261401005

Borrower's address is
22 LILLY POOL, IRVINE, CA 92620-3399
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
CTC REAL ESTATE SERVICES
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY CA 93065 ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JANUARY 14, 2005    . The Note states that Borrower owes Lender
ONE MILLION and 00/100

Dollars (U.S. $ 1,000,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than FEBRUARY 01, 2035    .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [X] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |

LEGAL DESCRIPTION

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: _mo_

VMP -6A(CA) (0207)      CHL (09/02)      Page 2 of 16      Form 3005 1/01

EX, A
Page 5 of 79

24

DOC ID #: 0008547261401005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Initials: _M o'_

EX.A
Page 16 of 79
25

DOC ID #: 0008547261401005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

-6A(CA) (0207)          CHL (09/02)          Page 14 of 16

Initials: _m̸ ʋ_

Form 3005  1/01



EX. A
Page 17 of 79
2-6

Recorded in Official Records, Orange County
Hugh Nguyen, Clerk-Recorder

| | | | | | | | | | | | | | | | | | | | | | | | | | 9.00

* $ R 0 0 0 8 3 4 3 0 9 2 $ *

2016000193584 3:27 pm 05/02/16

37 416 S15 F13   1

0.00 0.00 0.00 0.00 0.00 0.00 0.00 0.00

RECORDING REQUESTED BY:

LSI Title Company

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

---

APN: 551-101-42          TS No: CA08000947-16-1          TO No: 160088210-CA-VOI

## SUBSTITUTION OF TRUSTEE

WHEREAS, MYONG SUK OH, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY was the original Trustor, CTC REAL ESTATE SERVICES was the original Trustee and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for AMERICA'S WHOLESALE LENDER, its successors and assigns, was the original Beneficiary under that certain Deed of Trust dated January 14, 2005 and recorded on January 21, 2005 as Instrument No. 2005000052274 of official records in the Office of the Recorder of Orange County, California;

WHEREAS, the undersigned current Beneficiary, desires to substitute a new Trustee under said Deed of Trust in place of and instead of said original Trustee, or Successor Trustee, thereunder in the manner in said Deed of Trust provided;

NOW THEREFORE, **The Bank of New York Mellon FKA The Bank of New York as Trustee (CWMBS 2005-03)** hereby substitutes **MTC Financial Inc. dba Trustee Corps**, whose address is 17100 Gillette Ave, Irvine, CA 92614, as Trustee under said Deed of Trust.

Dated: 4/18/16

The Bank of New York Mellon FKA The Bank of New York as Trustee (CWMBS 2005-03)   by Bayview Loan Servicing, LLC As Attorney In Fact

By: Randall Jackson          Assistant Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF ____**Pennsylvania**____

COUNTY OF ____**Montgomery**____

On ____Apr.l 18 2016____ before me, ____Lynda Buehler____ Notary Public, personally appeared ____**Randall Jackson**____, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ____PENNSYLVANIA____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public Signature        Lynda Buehler

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Lynda Buehler, Notary Public
Upper Dublin Twp., Montgomery County
My Commission Expires Dec. 27, 2016
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

EX. B

Order:  Doc: 2016-193584 ID0011 05-02-2016          Created by: Romeo Yanez  Printed: 8/15/2016 2:06:12 PM

1  JEFFREY B. GARDNER, ESQ. (BAR NO. 115648)
   jeff.gardner@sbgk.com
2  CATHY KNECHT ROBINSON, ESQ. (BAR NO. 226275)
   cathy.robinson@sbgk.com
3  BARRY, GARDNER & KINCANNON
   A PROFESSIONAL CORPORATION
4  2214 FARADAY AVENUE
   CARLSBAD, CA 92008
5  PHONE: (760) 754-9111 FAX: (760) 754-3935
6
7  Attorneys for Defendants
   BAYVIEW LOAN SERVICING, LLC,
8  AKA BAYVIEW AND MARILYN CORO

9

10              UNITED STATES DISTRICT COURT

11              SOUTHERN DISTRICT OF CALIFORNIA

12

13

14  PAMELA CHYBA                  CASE NO.  3:14-cv-01415-BEN-BLM

15              Plaintiff,        DECLARATION OF RANDALL
                                  JACKSON IN SUPPORT OF
16                                DEFENDANTS BAYVIEW LOAN
                                  SERVICING, LLC AND MARILYN
17  vs.                           CORO'S MOTION FOR SUMMARY
                                  JUDGMENT
18  BAYVIEW LOAN SERVICING,
    LLC, AKA BAYVIEW; DAVID       Judge:  Roger T. Benitez
19  ERTEL; AND MARILYN CORO,
20                                Motion for Summary Judgment:
              Defendants.         Date:   March 21, 2016
21                                Time:   10:30 a.m.
22                                Room:  5A
23

24

25

26

27

28      I, Randall Jackson, declare as follows:

                            1
                         EX. C
                          28

1.     I am the Assistant Vice President with Bayview Loan Servicing, LLC ("Bayview"). In such capacity I have direct control and supervision of the books and records of Bayview as they relate to the transactions with Plaintiff and the subject mortgage loan, which are the subject of the within action, and I am familiar with the manner in which such books and records are compiled. The books and records of Bayview are maintained in the ordinary course of business by persons having a business duty to Bayview to make and maintain such books and records, and are made at or near the time of the transactions and events depicted therein. As to the facts set forth herein, they are either personally known to me, or I have gained knowledge of them from the books and records of Bayview. The matters stated herein are within my personal knowledge and belief, and if called upon as a witness, I could testify competently thereto.

2.     On or near September 5, 2005, Plaintiff Pamela Chyba ("Chyba") obtained a mortgage loan in the amount of $113,277.00 from Ryland Mortgage Company ("Ryland") (hereinafter referred to as "the Loan"). A true and correct copy of the Promissory Note for the Loan is attached hereto as Exhibit "A".

3.     The Loan was secured by a Deed of Trust on the real property located at 3239 Yeltes, Grand Prairie, Texas, 75054. A true and correct copy of the Deed of Trust is attached hereto as Exhibit "B".

4.     All beneficial interests in the Deed of Trust were assigned to The Bank of New York Mellon FKA The Bank of New York, As Trustee For the Certificateholders of CWALT, Inc. Alternative Loan Trust 2005-57CB, Mortgage Pass-Through Certificates, Series 2005-57CB ("BONY"), which was recorded as Instrument Number D211030269 on the subject property on February 7, 2011.

5.     Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LLP ("BANA") was the active servicer for the Loan until October 16, 2012.

6.     The sub-servicing for the Loan was transferred to Bayview Loan Servicing, LLC ("Bayview") on October 16, 2012.

1    7.      Upon transfer of the servicing of the Loan to Bayview, Bayview received

2    copies of the Loan file from BANA, which BLS has maintained in the ordinary course

3    of business.

4    8.      Included in the file for the Loan is a copy of a letter from BANA dated

5    September 26, 2012, wherein BANA provided Chyba notice that, as of October 16,

6    2012, Bayview would be the new loan servicer for the loan.  A true and correct of the

7    September 26, 2012 letter is attached hereto as Exhibit "C."

8    9.      Included in the file for the Loan is a copy of a letter from BANA dated

9    November 20, 2012, wherein BANA informed Chyba that the Loan was service

10   released to Bayview on October 16, 2012, and that BANA had ordered a Payment

11   History for the Loan which it would send under separate cover.  A true and correct copy

12   of the November 20, 2012 letter is attached hereto as Exhibit "D".

13   10.     Included in the file for the Loan is a copy of a letter from BANA dated

14   November 21, 2012, wherein BANA sent the Payment History for the Loan to Chyba, a

15   true and correct copy of which is attached hereto as Exhibit "E".

16   I declare under penalty of perjury under the laws of the State of California that

17   the foregoing is true and correct.  Executed this 22ND day of February 2016, at

18   FORT WASHINGTON _____ (city), PENNSYLVANIA _____ (state).

19

20

21                                    Randall Jackson

22                              Assistant Vice President

23

24

25

26

27

28